**FILED**
**JULY 31, 2014**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31052-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| MORGAN HALE DAVIS, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — During a helicopter flyover of Morgan Davis's property, law enforcement observed at least 20 marijuana plants growing in an exposed greenhouse. An Okanogan deputy sheriff obtained a warrant to search two greenhouses, a house, and a shed on the property. The search uncovered over 121 marijuana plants in the greenhouses. In the home, the officers found processed marijuana and distribution paraphernalia. Mr. Davis was charged and convicted of the crime of manufacture of marijuana. Mr. Davis appeals, contending that the trial court erred in denying his motion to suppress the evidence found on the property. He maintains the affidavit supporting the search warrant was insufficient because it failed to consider whether the marijuana was legal under the 2011 amendments to the Medical Use of Marijuana Act (MUCA), chapter

No. 31052-3-III
*State v. Davis*

69.51A RCW. He also maintains that the officers lacked probable cause to search the house because officers failed to establish a nexus between the marijuana in the greenhouse and the residence. Finding no error, we affirm.

FACTS

On June 30, 2010, Detective Jan Lewis of the North Central Washington Narcotics Task Force and Deputy Terry Shrable of the Okanogan County Sheriff's Office flew in a helicopter over property located on Reevas Basin Road near Tonasket, Washington. The officers observed two greenhouses. One greenhouse was partially uncovered, revealing to the officers approximately 20 large growing marijuana plants. The officers noted other buildings on the property, including a small stick built house located just east of the greenhouses and a small stick built shed west of the greenhouses. Officers confirmed that the property's address was 44 Reevas Basin Road and that it was owned by Mr. Davis.

Detective Lewis flew over the property again on July 6. The tops of the greenhouses were covered with plastic, but the detective saw dark green coloring through the plastic. Detective Lewis believed the green color to be growing marijuana plants.

The next day Detective Lewis obtained a warrant to search the two greenhouses, the house, and the shed on Reevas Basin Road. The search warrant requested permission to search for evidence of manufacturing marijuana, including books, records, receipts,

ownership of the residence, and identifying information. In addition to a narrative of events by Detective Lewis, the warrant included an aerial photograph of the property taken during the July 6 flyover. The affidavit stated, "In this photo you can clearly see the green houses to the left of the house. The larger of the two green houses was half opened when the initial flight was done. This is the one that I could see growing marijuana plants in. Everything in the photo including the outbuildings is on the same parcel of property. There are no other driveways or houses except for the one in the photo that have access to these marijuana plants." Clerk's Papers (CP) at 85.

The photograph showed the residence, greenhouses, garden area, and outbuildings all within a clearly defined living compound. The compound is well separated from other structures or homes. The residence was approximately 50 to 70 feet from the greenhouses and there were no other houses nearby. Also, only one access road approaches the property and ends there.

On July 8, officers executed the search warrant. Upon arrival at the property, officers made contact with Adriane Constantine outside of the residence. She told officers that Ms. Hale, Mr. Davis's mother, was in the house. Officers entered the residence to contact Ms. Hale and asked her to wait outside. Mr. Davis arrived during the execution of the warrant.

3

Officers located approximately 121 growing marijuana plants. The plants were primarily found in the greenhouses, with the exception of a few plants found growing outside. Inside the residence, the officers found various quantities of processed marijuana, packaged marijuana, marijuana seeds, paperwork, receipts, cash, an electronic scale, and packaging material. In the small shed, officers found several dried marijuana plants.

Mr. Davis was charged with one count of manufacture of marijuana under RCW 69.50.401. Mr. Davis moved to suppress the evidence found in the house and the shed. He argued that the officers lacked probable cause to search the house and shed because there was no nexus between the greenhouses and the house and shed.

The trial court denied the motion. The court concluded that a clear legal nexus existed between the house, greenhouses, outbuildings, and immediate surrounding areas. In support of this conclusion, the court found that the photograph and the testimony showed that the land, house, greenhouses, garden area, and outbuildings were all within a clearly defined living compound. Additionally, the residence was approximately 50 to 70 feet from the greenhouses and there were no other houses nearby. The buildings were well separated from other structures or homes; the nearest other structure to the property

4

was over 700 yards away. Also, only one access road approached the property and ended on the property.

A jury found Mr. Davis guilty of manufacture of marijuana. Mr. Davis appeals. He challenges the denial of his motion to suppress the evidence. He contends that the observation of 20 plants was insufficient to establish probable cause of a crime because the 2011 amendment to the MUCA allows for legal possession of a certain quantity of marijuana, and there was no information that he failed to comply with the act. He also contends that officers lacked probable cause to search the house and shed because there was no nexus between these buildings and the suspected criminal activity observed in the greenhouses.

## ANALYSIS

*Probable Cause and MUCA.* Review of a probable cause determination has a historical fact component and a legal component. *State v. Emery*, 161 Wn. App. 172, 201, 253 P.3d 413 (2011), *aff'd*, 174 Wn.2d 741, 278 P.3d 653 (2012). On matters of historical fact finding, we apply an abuse of discretion standard when reviewing a magistrate's decision on whether information provided in the warrant is reliable and credible. *Id.* at 202. Then, for the legal component, we apply de novo review to determine whether the qualifying information as a whole amounts to probable cause. *Id.*

5

We consider only the information that was available to the issuing magistrate. *State v. Olson*, 73 Wn. App. 348, 354, 869 P.2d 110 (1994).

"'It is only the probability of criminal activity, not a prima facie showing of it, that governs probable cause. The [issuing judge] is entitled to make reasonable inferences from the facts and circumstances set out in the affidavit.'" *Emery*, 161 Wn. App. at 202 (alteration in original) (quoting *State v. Maddox*, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004)).

A search warrant may only be issued upon a determination of probable cause. *State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925 (1995). Probable cause exists where there are facts sufficient to establish a reasonable inference that the defendant is involved in criminal activity and that evidence of the criminal activity can be found at the place searched. *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999).

We reject Mr. Davis's challenge to the search warrant based on the 2011 amendments to the MUCA. First, the 2011 amendments to the MUCA do not apply here because the amendments were not in effect when the search warrant was issued for Mr. Davis's property in 2010. The 2011 amendments do not apply retroactively. *State v. Brown*, 166 Wn. App. 99, 104, 269 P.3d 359 (2012).

6

Second, this court has previously determined that where an affidavit sets forth enough details to reasonably infer the suspect is growing marijuana on his or her property in violation of the uniform controlled substances act, chapter 69.50 RCW, the affidavit does not need to show the MUCA's inapplicability to establish probable cause. *State v. Ellis*, 178 Wn. App. 801, 805-06, 315 P.3d 1170 (2014). While the 2011 amendments to RCW 69.51A.040 created a medical exception to the crime of manufacturing marijuana, this new exception functions the same as the old medical use affirmative defense provided in former RCW 69.51A.040(1) (1999). *Ellis*, 178 Wn. App. at 806. The medical use affirmative defense does not invalidate probable cause to search. *Id.*

The affidavit supporting the search warrant presents probable cause to believe that a crime was being committed in Mr. Davis's greenhouses. The affidavit sets forth enough details to reasonably infer that Mr. Davis was growing marijuana on his property. The MUCA has no effect on the validity of the warrant to search Mr. Davis's greenhouses.

The warrant to search Mr. Davis's greenhouses was supported by probable cause.

*Nexus Between the Greenhouses and the Home.* The Fourth Amendment to the United States Constitution prohibits the issuance of a warrant unless the warrant particularly describes the place to be searched and the items or persons to be seized. Accordingly, probable cause requires a nexus between criminal activity and the item to be

seized, and also a nexus between the place to be searched and the item to be seized. *Thein*, 138 Wn.2d at 140 (quoting *State v. Goble*, 88 Wn. App. 503, 509, 945 P.2d 263 (1997)).

While the affidavit need not make a prima facie showing of criminal activity, it must show criminal activity is at least probable. *Maddox*, 152 Wn.2d at 505. Warrants must be based on specific facts, but a magistrate reviewing a warrant application is entitled to rely on his or her own common sense and experience to determine what inferences may be reasonably drawn from the facts for purposes of making probable cause determinations. *Thein*, 138 Wn.2d at 148-49. "Judges looking for probable cause in an affidavit may draw reasonable inferences about where evidence is likely to be kept, including nearby land and buildings under the defendant's control." *State v. Gebaroff*, 87 Wn. App. 11, 16, 939 P.2d 706 (1997).

In *Thein*, our Supreme Court held that mere conclusory assertions in a warrant application about the common habits of drug dealers were not enough, by themselves, to support the issuance of a warrant to search a suspected drug dealer's home for contraband. *Thein*, 138 Wn.2d at 150-51. Specifically, the court held that a conclusory assertion in an affidavit that drug traffickers commonly store a portion of their drug inventory and paraphernalia in their residences was insufficient to establish a nexus

between evidence of illegal drug activity and the place to be searched, absent any statements actually tying the defendant's home to suspected criminal activity. *Id.* at 151.

Here, a sufficient nexus existed between the marijuana observed in the greenhouses and the search of the house and shed. The warrant established that the house and shed were located on the same defined parcel of land as the greenhouses and were close in proximity to one another. The parcel of land was owned by Mr. Davis. Access to both greenhouses and the home was from the same, single driveway. The officers observed at least 20 marijuana plants in one exposed part of the greenhouses. Based on these facts, it is reasonable for the court to infer that the house and shed allowed for tending the large grow operation and provided an on-site location to process the harvested marijuana. The affidavit in support of the warrant supports a reasonable inference that the house was related to the marijuana growing in the greenhouses and evidence of criminal activity could be found inside.

Unlike *Thein*, probable cause is not based on conclusions about the general habits of drug offenders. Instead, specific facts establish a sufficient basis that the house and shed were related to the marijuana growing in the greenhouses. The close physical proximity of the greenhouses to the home and the shed, Mr. Davis's control over both areas, and the single entrance for both the house and the greenhouses, provided probable

9

cause to believe that the house and shed were part of the marijuana manufacture operation. Accordingly, the affidavit in support of the search warrant established probable cause to search the home for evidence related to the manufacture and distribution of marijuana.

The trial court did not err when it denied Mr. Davis's motion to suppress the evidence found in the house and shed. A sufficient nexus existed between the house and shed and the marijuana found growing in the greenhouses.

We affirm.

Lawrence-Berrey, J.

WE CONCUR:

Korsmo, J.

Fearing, J.

10