# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71966-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| NAAMAN JAMAL WASHINGTON, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: August 11, 2014 |
| | ) | |

COX, J. – Naaman Jamal Washington appeals his conviction of first degree unlawful possession of a controlled substance with intent to deliver (marijuana), unlawful possession of a controlled substance (hydrocodone), and first degree unlawful possession of a firearm. He fails in his burden to show that his trial counsel was ineffective. The evidence was sufficient to prove unlawful possession of a firearm. And the evidence was also sufficient to show his ability to pay nonmandatory legal financial obligations at the time of sentencing. His claims asserted in his statement of additional grounds do not warrant relief. We affirm.

On May 22, 2011, Washington was a passenger in the front seat of a car that was driven by California Smith-Usher on Interstate 5. Washington State Patrol Trooper, James Meldrum, conducted a random license plate check on the car and saw that its owner's license was suspended.

The description of the car's owner matched that of Smith-Usher, the driver. Accordingly, the trooper pulled the car over in a no-park, tow-away zone on the busy interstate. When he approached the vehicle, the trooper told Smith-

Usher and Washington that the stop was being audio and video recorded by equipment in the trooper's car. The video recording of the events that followed was admitted into evidence at the suppression hearing in this case.

When Trooper Meldrum first spoke to the driver, he smelled the odor of marijuana and saw a bag filled with "pre-packaged baggies of marijuana" sitting at Washington's feet. Washington acknowledged that the bag contained marijuana. He claimed that his possession of the drugs was legally authorized because he was a designated provider for a medical marijuana patient. He gave the trooper two documents to support his claim. They, too, were admitted into evidence at the trial that followed.

Trooper Meldrum stated that he believed the documents did not prove that Washington's possession of the marijuana was authorized. He arrested Washington for possession of marijuana. During a search incident to arrest, Trooper Meldrum found a bottle with no label containing hydrocodone pills in Washington's pocket.

Other troopers arrived at the scene. Trooper Meldrum retrieved Washington's wallet, cell phone, and the bag of marijuana from the front passenger's side of the car. Trooper Collin Overend-Pearson assisted Trooper Meldrum in preparing the car for impound.

Jerry Clark, a private tow truck operator, impounded the car. Clark conducted an impound inventory of the car and found two handguns. One gun was inside the locked glove box, and the other gun was in the pocket of a jacket

on the rear seat. When Clark reported this to the authorities, Trooper Meldrum came to where Clark was and seized the guns pursuant to a warrant.

By amended information, the State charged Washington with unlawful possession of a controlled substance with intent to deliver (marijuana), unlawful possession of a controlled substance (hydrocodone), and two counts of first degree unlawful possession of a firearm, one for the gun in the glove compartment and the other for the gun in the jacket.

Washington's counsel moved to suppress the marijuana arguing that it was the fruit of an unlawful search. The trial court denied this motion. It concluded that the "troopers validly impounded defendants' [sic] car and they lawfully conducted a pre-impound inventory search of the car."

At trial, Washington's counsel moved to dismiss all of the charges after the State rested. The trial court dismissed the unlawful possession of a firearm charge for the gun in the glove compartment but submitted the other charges to the jury.

After the close of the evidence and before the jury began its deliberations, the trial court read a stipulation to the jury. The stipulation was that Washington "had previously been convicted of a felony, which is a serious offense." Among the court's instructions to the jury was one on Washington's affirmative defense regarding designated providers for medical marijuana patients.

The jury convicted on all remaining charges. The trial court sentenced Washington to confinement and imposed mandatory and nonmandatory legal financial obligations.

Washington appeals.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Washington argues that his trial counsel was ineffective. Because he fails in his burden to show that counsel's performance fell below an objective standard of reasonableness, we disagree.

A criminal defendant has the right to effective assistance of trial counsel under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution.[1] To prevail on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance fell below an objective standard of reasonableness and that this deficient performance prejudiced his trial.[2]

There is a strong presumption of effective representation of counsel, and the defendant must show that there was no legitimate strategic or tactical reason for the challenged conduct.[3] To show prejudice, the defendant must show that but for the deficient performance, there is a reasonable probability that the outcome would have been different.[4] If we conclude that either prong has not been met, we need not address the other prong.[5]

---

[1] State v. Hendrickson, 129 Wn.2d 61, 77, 917 P.2d 563 (1996).

[2] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

[3] McFarland, 127 Wn.2d at 335-36.

[4] In re Pers. Restraint of Pirtle, 136 Wn.2d 467, 487, 965 P.2d 593 (1998).

[5] Strickland, 466 U.S. at 700.

*Failure to Present Evidence*

Washington first argues that his counsel was ineffective because he failed to present evidence during the suppression hearing that would have established the "illegality of the marijuana seizure." He contends that this evidence, which includes portions of a video recording showing the search, supported the argument that Trooper Meldrum's marijuana seizure was not part of an inventory search. We disagree.

"Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution, warrantless searches and seizures are per se unreasonable, with few exceptions."[6] One of the exceptions is a "noninvestigatory inventory search" accompanying a lawful vehicle impound.[7] This search must be conducted in good faith.[8] It cannot be a pretext for an investigatory search.[9]

"The principal purposes of an inventory search are to (1) protect the vehicle owner's property; (2) protect the police against false claims of theft by the owner; and (3) protect the police from potential danger."[10]

Here, the trial court concluded that Trooper Meldrum and Trooper Pearson "validly impounded defendants' car [sic] and they lawfully conducted a pre-

---

[6] State v. Green, 177 Wn. App. 332, 340, 312 P.3d 669 (2013).

[7] State v. Tyler, 177 Wn.2d 690, 701, 302 P.3d 165 (2013).

[8] Id.

[9] Id.

[10] Green, 177 Wn. App. at 340.

impound inventory search of the car." To support this conclusion of law, it entered the following finding of fact:

> Trooper Pearson arrived to assist. The troopers prepared the car for impound because Smith-Usher's car was in a no-park, tow-away zone. Trooper Meldrum retrieved defendant's wallet, cell phone, and the bag from the front passenger's side of the car. The marijuana was in a Taco Bell bag which held several separate pre-packaged baggies of marijuana.[11]

This unchallenged finding is a verity on appeal. Washington correctly argues that he need not challenge this finding to argue that his trial counsel was ineffective.

Specifically, Washington asserts that his trial counsel was deficient because he did not point to particular portions of the video recording that would support the argument that Trooper Meldrum was not conducting a good faith inventory search when he retrieved the bag of marijuana. He asserts that Trooper Meldrum was actually conducting an investigatory search when he seized the bag.

Given the strong presumption of effective representation, Washington fails to show that his counsel was deficient for failing to point to certain portions of the video recording. Our review of the record shows that portions of the recording include the troopers' discussion about whether a warrant was needed; Trooper Meldrum retrieving a wallet, cell phone, and the bag of marijuana from the car; and Trooper Pearson separately walking around the car with a clipboard inventorying the contents of the car.

---

[11] Clerk's Papers at 189.

But these portions of the video recording do not support the argument that Trooper Meldrum was conducting an investigatory search. Rather, the recording shows that Trooper Meldrum and Trooper Pearson were jointly conducting in good faith an inventory search prior to the vehicle being impounded. Based on this record, an argument by counsel to the contrary would not have been successful. Thus, Washington fails to show that his trial counsel's performance was deficient for failing to point to certain portions of the recording. Because he fails to show the first prong of the controlling test, we need not reach the second prong, prejudice.

*Failure to Propose a Jury Instruction*

Washington next argues that his counsel was ineffective for failing to propose a jury instruction that would have supported his sole defense. We again disagree.

To establish ineffective assistance based on counsel's failure to request a jury instruction, the defendant must show that he was entitled to the instruction, counsel was deficient in failing to request it, and failure to request the instruction caused prejudice.[12]

Washington argues that his counsel was deficient because he failed to propose a jury instruction that would have supported his designated provider defense under the medical marijuana act. He asserts that his counsel "never proposed an instruction that would have allowed the jury to acquit based on this

---

[12] Strickland, 466 U.S. at 687; State v. Johnston, 143 Wn. App. 1, 21, 177 P.3d 1127 (2007).

defense." But Washington's counsel proposed an instruction stating an affirmative defense to the only marijuana charge. Instruction 11 states:

> It is a defense to a charge of **delivery of marijuana** that:
>
> (1) the defendant is eighteen years of age or older; and
>
> (2) the defendant was designated as a designated provider to a qualifying patient prior to assisting the patient with the medical use of marijuana; and
>
> (3) the defendant possessed no more marijuana than necessary for the qualifying patient's personal, medical use for a sixty-day period; and
>
> (4) the defendant presented a copy of the qualifying patient's valid documentation to any law enforcement official who requested such information; and
>
> (5) the defendant did not consume any of the marijuana obtained for the personal, medical use of the qualifying patient for whom the defendant is acting as designated provider; and
>
> (6) the defendant was the designated provider to only one qualifying patient at any one time.
>
> The defendant has the burden proving this defense by a preponderance of the evidence. Preponderance of the evidence means that you must be persuaded, considering all the evidence in the case, that it is more probably true than not true. If you find that the defendant has established this defense, it will be your duty to return a verdict of not guilty as to this charge.[13]

While the charge in this jury instruction, "delivery of marijuana," is not the charge in this case, "possession of marijuana with intent to deliver," the trial court, the prosecutor, and defense counsel treated this jury instruction as providing Washington with an affirmative defense to his only marijuana charge.

---

[13] Clerk's Papers at 117 (emphasis added).

The trial court stated that the medical marijuana defense instruction should be given based on the evidence presented at trial. It further explained that whether Washington "met the required elements on his burden of proof" was an issue for the jury. During closing argument, both the prosecutor and defense counsel argued whether Washington met these required elements. Thus, Washington has failed to show that his trial counsel's performance was deficient for failing to propose an instruction supporting his affirmative defense.

Washington acknowledges that Instruction 11 is "similarly worded" to the affirmative defense for possession of marijuana with intent to deliver. But Washington fails to persuasively explain how a differently worded instruction would have resulted in a different outcome at trial.

In his opening brief, Washington cites State v. Brown for the elements of the affirmative defense for possession of marijuana.[14] But that case does not provide all of the elements for the defense. Rather, it merely states the statutory definition for "designated provider."[15]

According to the Washington Pattern Jury Instructions: Criminal 52.11, the medical marijuana defense instruction for "possession," "delivery," and "manufacture" of marijuana is the same.[16] Thus, Washington's counsel proposed a jury instruction that would have allowed the jury to acquit Washington.

---

[14] Appellant's Opening Brief at 22-23 (citing State v. Brown, 166 Wn. App. 99, 102-03, 269 P.3d 359 (2012)).

[15] Brown, 166 Wn. App. at 102-03 (citing RCW 69.51A.010(1)).

[16] 11 Washington Practice: Washington Pattern Jury Instructions: Criminal 52.11 (3d ed. 2008) (citing RCW 69.51A.040(3); RCW 69.51A.010(1)).

Moreover, given the way the parties treated Instruction 11, there is no reason to believe that the jury did not consider whether Washington met the elements for the affirmative defense to the marijuana charge.

The State contends that Washington failed to put forth sufficient evidence to show that he was entitled to the affirmative defense instruction. Because of our resolution of the ineffective assistance of counsel issue, we need not address this argument.

## SUFFICIENCY OF EVIDENCE

Washington argues that there was insufficient evidence to support his first degree unlawful possession of a firearm conviction. Specifically, he contends that a limiting instruction prevented the jury from considering a stipulation to prove that Washington had been previously convicted of a serious offense. He is mistaken.

"Jury instructions, when not objected to, become the law of the case."[17] "A defendant may assign error to elements added under the law of the case doctrine, and that assignment 'may include a challenge to the sufficiency of evidence of the added element.'"[18]

---

[17] State v. Ortega, 134 Wn. App. 617, 622, 142 P.3d 175 (2006), review denied, 160 Wn.2d 1016 (2007).

[18] Id. (quoting State v. Hickman, 135 Wn.2d 97, 102, 954 P.2d 900 (1998)).

In State v. Ortega, this court considered whether a limiting instruction prevented the jury from considering a stipulation regarding prior convictions.[19] There, the parties agreed that "prior convictions were elements that had to be proved to the jury."[20] Consequently, the State "introduced proof in the form of a stipulation informing the jury that [Reynaldo] Ortega had been convicted in 1997 on two counts of protection order violations."[21]

During the trial, the court gave a limiting instruction because it admitted evidence of a 2004 conviction.[22] The limiting instruction stated, "Evidence that the defendant has previously been convicted of a crime is not evidence of the defendant's guilt. Such evidence may be considered by you in deciding what weight or credibility should be given to the testimony of the defendant and for no other purpose."[23]

This court concluded that "[e]ven if the limiting instruction became the law of this case as to the 1997 convictions, it did not deprive the jury of sufficient evidence upon which to find that Ortega had been twice convicted in the past."[24] The court explained:

---

[19] 134 Wn. App. 617, 621-22, 142 P.3d 175 (2006), review denied, 160 Wn.2d 1016 (2007).

[20] Id. at 621.

[21] Id.

[22] Id.

[23] Id.

[24] Id. at 622.

11

The limiting instruction required the jury to consider "evidence of a prior conviction" for no purpose other than evaluating the weight and credibility of Ortega's testimony. To use the prior convictions for the purpose of evaluating Ortega's testimony, the jury would first have to find that those prior convictions existed. The jury could properly consider the stipulation as evidence of the existence of the two prior convictions. This is the finding they made when they filled out the special verdict form. Having found that the 1997 convictions did exist, the jury would then follow the limiting instructions and not consider the 1997 convictions as evidence of Ortega's guilt on the three charges for which he was on trial.[25]

Here, a similar conclusion is appropriate. The parties entered into a written stipulation that Washington "had previously been convicted of a felony, which is a serious offense." The trial court read this stipulation to the jury before it read the jury instructions. The jury instructions included a limiting instruction that stated, "You may consider evidence that the defendant has been convicted of a crime only in deciding what weight or credibility to give to the defendant's testimony, and for no other purpose." To use the prior conviction for the purpose of evaluating Washington's testimony, the jury would first have to find that the prior conviction existed. The jury could properly consider the stipulation as evidence that Washington had been previously convicted of a serious offense to prove that element of unlawful possession of a firearm. Then, the jury would follow the limiting instruction and not consider the prior conviction for any other purpose.

Washington argues that Ortega should not control this case because it is factually distinguishable and logically infirm. We disagree and conclude that Ortega controls.

---

25 Id.

12

While Ortega involved multiple prior convictions and this case involved only one prior conviction, this factual distinction does not change the result. Washington asserts that "evidence was introduced here as to only one conviction, and the limiting instruction therefore cannot be interpreted to apply to anything but the evidence of that one conviction." But, as just discussed, the limiting instruction can apply after the jury considers the stipulation as evidence that Washington had been previously convicted of a serious offense. Washington fails to cite any authority that casts doubt on Ortega's analysis. Thus, Ortega controls this case, and we reject Washington's challenge to the sufficiency of the evidence.

The State argues that Washington is "precluded from bringing a claim that there was not sufficient evidence of that element" because he stipulated that he had been previously convicted of a serious offense. Thus, the State contends that Washington waived his right to hold the State to its burden of proof as to that element. But given the previous discussion, we need not address this argument.

## LEGAL FINANCIAL OBLIGATIONS

Washington challenges the trial court's imposition of $250 in nonmandatory legal financial obligations. In the judgment and sentence, the trial court made a finding that Washington "has the ability or likely future ability to pay the legal financial obligations imposed herein." Washington argues that this finding is not supported by sufficient evidence in the record. We disagree.

"Under RCW 10.01.160(3), '[t]he court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the

13

amount and method of payment of costs, the court shall take account of the

financial resources of the defendant and the nature of the burden that payment of

costs will impose."[26]

Here, the trial court made the following finding:

**ABILITY TO PAY LEGAL FINANCIAL OBLIGATIONS.** The court has considered the total amount owing, the defendant's past, present and future ability pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change. The court finds that the defendant has the ability or likely future ability to pay the legal financial obligations imposed herein. RCW 9.94A.753.[27]

First, we question whether Washington can raise this issue for the first

time on appeal under RAP 2.5(a).[28] But even if he can raise this issue, sufficient

evidence supports the trial court's finding.

In State v. Calvin, this court explained that "[w]e review the trial court's

decision to impose discretionary financial obligations under the clearly erroneous

standard."[29] "'A finding of fact is clearly erroneous when, although there is some

---

[26] State v. Calvin, ___ Wn. App. ___, 316 P.3d 496, 507 (2013) (alteration in original) (quoting RCW 10.01.160(3)), petition for review filed, No. 89518-0 (Wash. Nov. 12, 2013).

[27] Clerk's Papers at 170.

[28] See Calvin, 316 P.3d at 507 ("[T]he sentencing court's consideration of the defendant's ability to pay is not constitutionally required. Accordingly, the issue raised by Calvin is not one of constitutional magnitude that can be raised for the first time on appeal under RAP 2.5(a).") (citations omitted); State v. Blazina, 174 Wn. App. 906, 911, 301 P.3d 492 ("While we addressed the finding of current or future ability to pay in Bertrand for the first time on appeal under RAP 2.5(a), that rule does not compel us to do so in every case."), review granted, 178 Wn.2d 1010 (2013).

[29] ___ Wn. App. ___, 316 P.3d 496, 508 n.1 (2013).

14

evidence to support it, review of all the evidence leads to a 'definite and firm conviction that a mistake has been committed.'"[30]

Here, Washington testified at trial that he was a mechanic and owned his own mechanic business. He presented no evidence of any disability that would limit his ability to work in the future. Additionally, at the sentencing hearing, the trial court determined that Washington had retained, not appointed, counsel at trial. These facts are sufficient to support the challenged finding under the clearly erroneous standard.[31]

We also note that the trial court must again consider Washington's ability to pay when the State seeks to enforce the payment of the legal financial obligations.[32] Thus, Washington will have the ability to raise the issue again, if appropriate.

Washington relies on an earlier version of State v. Calvin to request that we strike the finding that Washington had the ability to pay the nonmandatory obligation.[33] But that version was amended on reconsideration.[34] Accordingly, we reject this argument.

---

[30] Id. (quoting Schryvers v. Coulee Cmty. Hosp., 138 Wn. App. 648, 654, 158 P.3d 113 (2007)).

[31] See Calvin, 316 P.3d at 507.

[32] State v. Blank, 131 Wn.2d 230, 242, 930 P.2d 1213 (1997); State v. Baldwin, 63 Wn. App. 303, 310-11, 818 P.2d 1116 (1991).

[33] Appellant's Opening Brief at 34 (citing State v. Calvin, 176 Wn. App. 1, 302 P.3d 509, amended on recons., ___ Wn. App. ___, 316 P.3d 496 (2013)).

[34] See Calvin, 316 P.3d at 507-08.

## STATEMENT OF ADDITIONAL GROUNDS

Washington raises several issues in his statement of additional grounds. None have merit.

First, Washington argues that his counsel was ineffective because he failed to call witnesses and present evidence to support Washington's affirmative defense for the unlawful possession of marijuana charge. But Washington's counsel submitted into evidence the documentation that Washington had to support the defense, and the trial court admitted this evidence. Moreover, Washington testified about the validity of these documents. Washington fails to specify what other witnesses should have been called and how they would have further supported his defense. "'Generally the decision whether to call a particular witness is a matter for differences of opinion and therefore presumed to be a matter of legitimate trial tactics.'"[35] Such tactics do not amount to deficient performance.

Additionally, Washington asserts that his counsel failed to move to dismiss Washington's marijuana charge. But defense counsel moved to dismiss the marijuana charge, and the trial court denied this motion for this charge.

Given this record, Washington fails to show that his counsel's performance fell below an objective standard of reasonableness and that this prejudiced his trial. Thus, these claims fail.

---

[35] In re Pers. Restraint of Morris, 176 Wn.2d 157, 171, 288 P.3d 1140 (2012) (quoting In re Pers. Restraint of Davis, 152 Wn.2d 647, 742, 101 P.3d 1 (2004)).

Second, Washington contends that his two 2009 convictions for conspiracy to commit a violation and violation of the Uniform Controlled Substance Act encompassed the same criminal conduct and should have counted as one conviction in his offender score. Although a criminal defendant may challenge an offender score for the first time on appeal, a defendant waives that right when the alleged error is based on a factual dispute or trial court discretion.[36] Where a defendant is convicted of more than one crime, the trial court must make both factual and discretionary decisions in determining whether those crimes arose from the same criminal conduct.[37] Thus, by failing to raise the issue of same criminal conduct at sentencing, a defendant waives the right to argue that issue on appeal.[38] Because Washington did not argue at sentencing that his offenses constituted the same criminal conduct, he cannot raise this issue for the first time on appeal.

Third, Washington asserts that there was insufficient evidence to support his first degree unlawful possession of a firearm conviction. Specifically, he contends, without citation to authority, that there was no evidence proving that he had prior notice that he was prohibited from possessing a firearm. The failure to cite authority in support of this argument would generally warrant no further consideration of it. Nevertheless, in State v. Breitung, the supreme court

---

[36] State v. Graciano, 176 Wn.2d 531, 538-39, 295 P.3d 219 (2013); In re Pers. Restraint of Goodwin, 146 Wn.2d 861, 874, 50 P.3d 618 (2002).

[37] State v. Nitsch, 100 Wn. App. 512, 523, 997 P.2d 1000 (2000).

[38] State v. Jackson, 150 Wn. App. 877, 892, 209 P.3d 553 (2009); In re Pers. Restraint of Shale, 160 Wn.2d 489, 496, 158 P.3d 588 (2007).

explained that RCW 9.41.047(1) "requires a convicting court to give notice of the prohibition of the right to possess firearms."[39]  But it also stated that "[l]ack of notice under RCW 9.41.047(1) is an affirmative defense, which [a defendant] must establish by a preponderance of the evidence."[40]  Here, Washington did not assert this affirmative defense at trial.  Thus, we will not consider this claim any further.

We affirm the judgment and sentence.

_Cox, J._

WE CONCUR:

_Trickey, J_

---

[39] 173 Wn.2d 393, 401, 267 P.3d 1012 (2011).

[40] Id. at 403.